
SILVERBERG
ZALANTIS LLP

Law Offices
3 Barker Avenue, Suite 180
White Plains, New York 10601
Tel. (914) 682-0707
Fax. (914) 682-0708
www.szlawfirm.net

May 11, 2006

## REQUEST FOR AN IMPARTIAL HEARING

Dr. Debra Jackson
Superintendent of Schools
Bedford Central School District
Fox Lane Campus, Route 172
Bedford, New York 10506

Re: Patrick Kelly, Date of Birth – July 12, 1989

Dear Dr. Jackson:

This office has been retained by Patricia and Philip Kelly, the parents of Patrick Kelly, born July 12, 1989. Patrick, a student residing within the Bedford Central School District (the "District") is classified with an emotional disability. His classification is not in dispute. The Kellys reside at 11 Delano Drive, Bedford Hills, New York 10507, their phone number is (914) 241-3538. Until recently Patrick was placed in the Special Class KEA program at the Fox Lane High School. He currently attends a residential therapeutic school located at Wisdom Ranch in Arco, Idaho, where he was unilaterally placed by his parents on March 13, 2006. The Kellys are requesting an impartial hearing for the purpose of seeking reimbursement for the financial costs associated with educating Patrick for the 2005/06 school year. At the hearing, the Kellys will show that the District failed to recommend and implement a free appropriate public education for their son for the Summer of 2005 and the 2005/06 school year.

### Subject of the Complaint

Patrick was first classified with an emotional disturbance by the District's Committee on Special Education ("CSE") on March 26, 2003, when he was an eighth grade student at the Fox Lane Middle School. Patrick had been exhibiting great difficulty socially, behaviorally, emotionally and academically and in spite of various interventions continued to flounder. He evidenced limited academic productivity and was suspended from school for behavioral incidents on several occasions. Concerned about Patrick's behavior and academic performance, Patrick's parents had him evaluated privately by Dr. Laurence Baker and then at Four Winds Hospital where Patrick had been admitted into the Partial Hospitalization Program in December

www.szlawfirm.net

June 20, 2006
Page 2

2002. His parents referred him to the CSE for an evaluation on January 9, 2003. Dr. Baker's evaluation indicated depression and suggested a non-verbal learning disability. The District evaluation indicated overall cognitive functioning within the high average range, elements of depression and anxiety and attentional difficulties. The CSE classified Patrick with an emotional disturbance and recommended a resource room program five hours a week with individual counseling once a week. The decision, according to Patrick's Individual Education Program ("IEP") was based upon the following evaluations: **the District's psychological evaluation, dated 3/7/03; social history, dated 3/10/03; educational evaluation, dated 3/10/03; behavior intervention plan, dated 3/21/03; report card dated 6/24/02; report card dated 2/10/03; and a physical examination, dated 9/21/01.**

Unfortunately, Patrick's behavioral and emotional difficulties continued to escalate and in April 2003 he was admitted into Four Winds Hospital due to suicidal ideation and mood instability. After a two and one-half week hospital stay Patrick was referred to the Intensive Day Treatment program ("IDT"). During periods when Patrick returned to the middle school setting it was observed that he had a decreased ability to monitor his own behaviors, particularly in an unstructured setting. A number of incidents resulted in more disciplinary actions where Patrick was confrontational and combative with other students. The school psychologist reported that Patrick's anxiety had increased. Patrick was readmitted to Four Winds Hospital on May 7, 2003 after having written the word "pain" on his arm. At the Kelly's request an emergency CSE meeting was convened. At that meeting, held on May 8, 2003, it was decided that the CSE would begin the process of looking at alternative, therapeutic based programs. It was anticipated that Patrick would not return to the public middle school for the 2002/03 school year, but complete the school year either in the partial hospital program or on home instruction.

Despite the recognition that Patrick's needs may have changed, and a determination that a change in placement would be warranted, no updated evaluations were recommended or conducted by the District. Referral packets were sent to both day-treatment and residential facilities. The IEPs forwarded to those schools included a recommendation for resource room. The entire process concerning Patrick was haphazard and marked by a lack of clarity.

After Patrick was discharged from the inpatient hospitalization at Four Winds on May 21, 2003, he attended the partial hospitalization program there. Patrick continued to exhibit significant emotional issues with an increase in his level of anxiety, depression and agitation. In addition to his emotional deterioration, Patrick was developing a dependency on illegal drugs. In mid-June 2003, Patrick was admitted, once again, to Four Winds Hospital for five days due to significant depression. From there, Patrick was placed by his parents at the Summit Achievement Program, a six week intensive wilderness program in Maine, from June 16, 2003 to July 15, 2003. The CSE reconvened on July 21, 2003 for Patrick's annual review. At the meeting a psychiatric evaluation and the Four Winds discharge summary were added to the District's evaluations for review.

The CSE reviewed the psychiatric evaluation conducted by Dr. Gil Lichtshein which indicated a working diagnosis of mood disorder with a rule out of bipolar disorder. Dr. Lichtshein wrote "I do believe that there is a significant mood disorder and although there have not been any clear cut manic episodes, his mood instability, rages and overall lability along with

www.szlawfirm.net

June 20, 2006
Page 3

some disruptive behaviors, may be suggestive of a possible bipolar diathesis." Dr. Lichtshein recommended placement in a residential treatment facility.

With absolutely no record that a referral packet was ever even sent to Devereux Glenholme, a state approved residential therapeutic setting located in Connecticut, the CSE recommended that school for the 2003/04 school year. The CSE chairperson assured the Kelly's that they could request a CSE meeting at any time to review Patrick's program. However, she cautioned that the "CSE would require additional data to assist the committee in making changes in the recommendations at this time." The decision to change Patrick's placement to a residential treatment facility was based upon the following evaluations: **the District's psychological evaluation, dated 3/7/03; social history, dated 3/10/03; educational evaluation, dated 3/10/03; behavior intervention plan, dated 3/21/03; report card dated 6/24/02; report card, dated 2/10/03; physical examination, dated 9/21/01; Medical Discharge Summary, dated 5/21/03; and a psychiatric evaluation, dated 6/19/03.**

Patrick made a good adjustment to the residential treatment program provided at Devereux/Glenholme. Overall he made many gains on the goals and objectives he had been working on in therapy and had decreased challenging authority, reduced task avoidant behavior and improved his social skills. The staff at Devereux recommended adjustments to Patrick's educational program and developed a treatment plan. The staff working directly with Patrick reported in a counseling summary dated June 2, 2004 that *"Patrick continues to appear to be reliant upon Glenholme's setting that provides predictability and structure. Patrick continues to make progress here, and will benefit from continued time in the program to build on this success, internalize the gains he has made, and further develop his coping skills and anxiety management skills."* The professionals working directly with Patrick recommended continued time in the program.

Despite that recommendation, at Patrick's annual review meeting held on June 3, 2004, the CSE, without any updated evaluations, testing or data for support, decided to once again change Patrick's placement and return him to an inappropriate in district program known as "Special Class KEA" for the 2004/05 school year. Anxious to have their son return home and cognizant that the psychologist of the KEA (Keys to Emotional Awareness) program was Dr. Christine Nichols, the Kellys agreed to the change. Dr. Nichols had worked with Patrick in the past and the Kellys felt hopeful that she could support Patrick in this less restrictive placement. The CSE recommended that Patrick be given extended school year services and remain in Glenholme for the Summer of 2004. The CSE recommendation was based upon the following evaluative material: **the Glenholme Counseling Summary, dated 6/2/04 (which recommended a continued placement at Glenholme); the District's psychological evaluation, dated 3/7/03; social history, dated 3/10/03; educational evaluation, dated 3/10/03; teacher progress summary, dated 5/28/04; physical examination, dated 9/21/01; Medical Discharge Summary, dated 5/21/03; and the psychiatric evaluation, dated 6/19/03 (which also recommended a residential placement).** No updated testing was recommended or conducted to support the change in placement.

Not surprisingly, Patrick's reentry to the District program was unsuccessful. Patrick had been enrolled in a therapeutic residential treatment facility to address his anxiety, impulsivity,

June 20, 2006
Page 4

poor judgment, verbal aggressions, oppositional/defiant behavior, immaturity and mood swings. He was also there because while he was in the less restrictive district program he challenged authority, had been physically aggressive, was hopeless at times, engaged in substance abuse and had suicidal ideation. Initially, Patrick was able to maintain a brief modicum of progress in the KEA program. The CSE recommended a continuation of the Special Class KEA program for the 2005/06 school year at Patrick's annual review held on March 22, 2005. However, the CSE's premature decision to return Patrick to an in district program began to unravel shortly thereafter. By March 2005, Patrick was once again exhibiting his physically aggressive behavior against his peers, was back in psychiatric treatment and had commenced, after a year of drug-free living, self-medicating with illegal drugs. Despite his deteriorating condition, no recommendations were made to adjust his inappropriate program. Furthermore, in April 2005, these emotionally fragile students were suddenly and without any warning informed that the entire KEA staff, the teachers, psychologist and supervisor, would not be returning the following year.

Patrick needed structure and support. Without the residential therapeutic environment over the Summer of 2005, his condition deteriorated. Patrick was in need of an extended school year program for the Summer 2005. Without that educational support, Patrick's emotional decompensation spiraled. Meanwhile, the Kellys continued to cooperate with the District staff and consented to Patrick's reevaluation on August 15, 2005.

Patrick's history of anxiety, aggressive behavior, hospitalizations and substance abuse began to repeat itself during the 2005/06 school year. The Kellys' optimism about Patrick's return began to fade. As early as September 27, 2006, Patrick was admitted to the Silver Hill Hospital for substance abuse. He was thereafter discharged on October 4, 2005 and referred to the partial hospitalization program at Four Winds to address his emotional disability. When Patrick returned to the KEA program it was glaringly apparent that Patrick's intense needs could not be met in the program recommended by the District. After many team meetings with the KEA staff, the Kellys requested a program review by the CSE which was held on November 17, 2005. No updated evaluations were conducted, no updated information was considered. Without any basis to support the change, Patrick's placement was changed from the mainstream to to an all day placement in the "KEA room." No assessments took place. The CSE simply altered Patrick's schedule to isolate him from his peers so that his entire school day was thereafter spent segregated from the school population. He no longer attended any mainstream classes. He was in the "KEA classroom" (known by those who teased Patrick as the "retarded room") all day long. The other changes reflected on the IEP include the cryptic reference to a "behavioral intervention consultation for teacher" and an "access to word processor."

While Patrick was present in the KEA room, the District failed to complete its evaluation in a timely fashion. There was no educational testing, no psychological testing, no psychiatric evaluations, mental health assessments, functional behavior assessments or assistive technology evaluations. Without the benefit of a comprehensive evaluation, the District was unable to address Patrick's individual needs and develop appropriate educational goals.

Meanwhile, the school psychologist reported that Patrick's level of anxiety and agitation could increase his provocative behaviors. She was right. After the November CSE meeting, the Kellys received several phone calls each week concerning Patrick's behavior. They met

June 20, 2006
Page 5

repeatedly with the KEA team but Patrick was simply not appropriately placed. At each meeting the Kellys were stonewalled. They expressed their concern that Patrick was not able to progress in the KEA Program and asked for guidance on how to move forward. At each meeting, the Kellys voiced their concern that Patrick was in need of a more structured, therapeutic setting. No viable options were offered as the KEA team suddenly dismissed Patrick's long suffering emotional struggles as substance abuse alone. Without a clear understanding of Patrick's functioning, the inadequate program modifications, placement and schedule changes were simply insufficient to address Patrick's intense needs. He was thereafter hospitalized at Four Winds on January 9, 2006.

By letter dated January 12, 2006, the Kellys requested another CSE meeting. Their son was in the hospital and they knew he could not safely return to the inadequate KEA program. Mrs. Kelly hand delivered the request to the Assistant Director of Special Education, Laurie Bauer. In her request, Mrs. Kelly stated "I have had several meetings with the KEA team over the last month and one half and it has become apparent that KEA no longer meets the requirements for Patrick's education. Currently, Patrick is being hospitalized at Four Winds Psychiatric Hospital. Due to the crisis circumstances, which we are presently facing, I am requesting a Committee meeting as soon as possible." Rather than schedule a CSE meeting, Laurie Bauer convinced the Kellys to meet, yet again, with the KEA team. The Kellys agreed and a meeting with the KEA team was held on January 17, 2006.

At the KEA meeting the Kellys renewed their request for a more supportive and structured placement for Patrick. The Kellys requested a therapeutic residential treatment program. In response, Ms. Bauer erroneously informed the Kellys that it was now required by the State Education Department that before any recommendations are made for a therapeutic residential treatment program, the Kellys would have to meet with the "Mental Health Association." Given that pronouncement, the Kelly's reasonably believed they were required to meet with a social services agency before a CSE meeting could be held. They agreed to delay their request for the meeting. Ms. Bauer told them that their desire to place Patrick in a more supportive program would have to wait until they had complied with these alleged regulations. They were told that they could not move forward with a CSE meeting until they had first spoken with the mental health association to discuss network/community services. With no viable program available for Patrick upon his discharge from Four Winds, the threat of Patrick injuring himself or others and the mistaken belief that the CSE could not act until they accessed community services, the Kellys decided to place Patrick into an intensive six week therapeutic Wilderness Intervention Program on January 18, 2006.

The Kellys complied with Ms. Bauer's directive to meet with community mental health representatives and thereafter requested, for the third time that year, a CSE meeting. The meeting was scheduled for March 9, 2006. In the meantime, the Kellys provided the District with notice of their intention to unilaterally place Patrick in a residential treatment facility and arranged for a private educational evaluation in the absence of the District's compliance with its obligation to reevaluate Patrick.

By letter to you dated February 23, 2006, and received on February 24, 2006, the Kellys provided notice that they intended to withdraw Patrick from the District program and unilaterally

www.szlawfirm.net

June 20, 2006
Page 6

place him in a residential therapeutic school at Wisdom Ranch in Arco, Idaho. The District had failed Patrick. The District's failure to properly assess Patrick's individual needs became evident in the KEA program where Patrick failed to progress in any demonstrable way. In fact, he got worse. No effort was made to properly assess Patrick's needs. The same old, obsolete information used to initially classify Patrick in March 2003 (and used to send Patrick to a residential placement for the 2003/04 school year and then used to remove Patrick from the same residential placement and back into the district program for the 2004/05 school year) was also used to deny the Kellys request for a residential therapeutic placement for the latter part of the 2005/06 school year.

At the March 9, 2006 CSE meeting, Patricia Kelly shared with the committee her sincere belief that Patrick would need a residential therapeutic school to address his severe emotional disability. To support her position Mrs. Kelly shared with the CSE the recommendations of Patrick's treating psychiatrist, his therapist, a psychologist who had recently evaluated Patrick and a social worker who had been working with Patrick for educational planning. Each one suggested that due to Patrick's poor judgment, inability to control his impulses and severe mental illness he would need a structured therapeutic setting. In a complete about-face, the District rejected those recommendations out of hand and instead determined that "CSE members agreed that student should continue in the KEA Program as a program that could meet his needs in the least restrictive environment." To support that inadequate and clearly inappropriate recommendation, the CSE relied upon the following evaluations: **Report Card, 2/1/06.** The IEP states "The committee reviewed all current educational performance areas, social/emotional, physical and management needs, assistive technology, program modifications, test accommodations. Program staff report that goals continue to be appropriate." The most current information in the student's file to support the District's inappropriate determinations was over three years old and despite the student's severe emotional state, only one social emotional goal was recommended.

Patrick was in desperate need of a more restrictive and supportive program and despite repeated requests for assistance throughout the school year, the Kellys' pleas for help were ignored. At the CSE meeting held on March 9, 2006, the Kelly's final request for a residential placement was denied. Rather than fairly consider the information provided to the CSE by the Kellys, -- by professionals familiar with Patrick and his needs -- the only document identified in the IEP to support the CSE's denial was his "Report Card 2/1/06." That report card was absent from the records forwarded by the District to the Kellys. However, the cumulative progress report identifies either "I" (Incomplete) or "F" (Fail) for all of Patrick's subjects for the 2005/06 school year. Patrick's progress report does not fairly support the continued recommendation of a program in which Patrick was failing.

### Proposed Solution to the Problem to the Extent Known at this Time

The District is required to pay for educational services obtained for a student by his parents, if (1) the services offered by the District were inadequate, (2) the services selected by the parent were appropriate; and (3) equitable considerations support the parents' claim. The determination of whether the program offered by the District affords the student a free appropriate public education is made if the District complied with the procedural requirements of

June 20, 2006
Page 7

the law and if the program was reasonably calculated to enable the student to receive educational benefit. The District's recommendations for the Summer of 2005 and the 2005/06 school year were inappropriate. The District failed to comply with the procedural requirements and the substantive recommendations were not reasonably calculated to provide Patrick with educational benefit.

Despite clear information which would warrant a placement in a residential therapeutic setting, the District failed to adequately assess and address Patrick's needs. Patrick demonstrated his ability to progress academically and emotionally when he was previously placed in the residential therapeutic setting. Patrick is making progress in his current residential setting. The Kellys have at all times cooperated with the District, met with District staff when requested and provided notice of their intention to withdraw Patrick in the face of the District's failure to properly address his needs.

The Kellys seek reimbursement for all costs associated with the education of their son for the 2005/06 school year, including the cost of the Ascent intensive therapeutic program, costs of Wisdom Ranch School, transportation expenses, reimbursement for the costs of evaluating Patrick in the District's absence to do so, compensatory education for the lost educational opportunities Patrick sustained as a result of the District's denial of recommending a free appropriate public education for Patrick for extended school year services for the Summer of 2005 and the 2005/06 school year, and reimbursement of all expert and attorneys' fees generated in connection with the prosecution of this matter.

Very truly yours,

Silverberg Zalantis LLP

Leah L. Murphy

cc:   Phil and Patricia Kelly