BEDFORD CENTRAL SCHOOL DISTRICT
-------------------------------------------------------X
In the Matter of the Application of P.K by
his Parents, P and PK,

Petitioners,

For a Due Process Impartial Hearing,

-against-

Bedford Central School District.

District.
-------------------------------------------------------X

MAY − 5 2008
S. D. OF N.Y.

Decision and Order

07CV. 8494 (WCC)

**RECEIVED**

APR 0 9 2007

OFFICE OF
STATE REVIEW

Hearing Officer's Findings of Fact and Decision

NAMES AND TITLES OF PERSONS WHO APPEARED

FOR THE STUDENT:

| | |
|---|---|
| Leah Murphy Esq.<br>Spagnuolo, Scapoli & Murphy, P.C. | Attorney for the Parent |
| Mrs. K | Parent |
| Mr. K | Parent |
| Dr. Uy | Psychiatrist |
| Suzanne Hanna | Certified Social Worker |
| John Schrom | Clinical Director of Ascent Wilderness Program |
| Jennifer Fields | Bedford School District Psychologist |
| Monte MacConnell | Director of Wisdom Ranch School |
| Jeffrey Schroeder | Ascent Psychologist |
| Fern Eisenberg | Learning Specialist |
| Robert Spear | Deliberate Directions |
| Candice Brady | Learning Specialist |
| Alyssa Kant | Bedford Central School District<br>School Psychologist |
| William Tozzo | Bedford Central School District<br>Mathematics teacher |

FOR THE DISTRICT:

| | |
|---|---|
| Ralph DeMarco<br>Ingerman Smith LLP | Attorney for District |

RECEIVED

APR 0 9 2007

OFFICE OF
STATE REVIEW

Laurie Bauer                    Assistant Director of Special Education
                                Bedford Central School District

Kieran O'Gorman                 Fox Lane High School
                                Learning Specialist

Tony Monchinski                 KEA Special Education Teacher

## FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 107971 |
| Student's Name: | P.K |
| Student's date of birth: | 7/12/89 |
| District: | Bedford Central School District |
| Hearing Requested by: | Parent |
| Date of Hearing: | 7/11/06; 7/12/06; 7/28/06 9/12/06; 9/14/06; 9/26/06; 11/9/06; 11/14/06; 12/8/06; 12/11/06 |
| Hearing Officer: | Mary Noe, Esq. |

**RECEIVED**

APR 0 9 2007

OFFICE OF
STATE REVIEW

Hearing Officer's Findings of Fact and Decision

P is a 17 year old student classified as emotionally disturbed in the Bedford Central School District. He currently attends the Wisdom Ranch School in Idaho. The parent requests tuition reimbursement for his placements from January 9, 2006 through June 30, 2007. Motions to extend the compliance date were granted.

## FACTS

During the 2002 through 2003, P attended the Bedford schools. On June 16, 2003 P attended The Summit Achievement Program in Maine for four to six weeks. (T. 172)

On June 19, 2003 Dr.Gil Lichtshein's Psychiatric Evaluation stated the following: Depression and Suicidal ideation, various medication, two inpatient psychiatric hospitalizations at Four Winds. Current working diagnosis is Mood Disorder NOS with a rule out of Bipolar Disorder. Recommendation for placement at residential treatment facility. (Parent's Exhbit 24)

In July 16, 2003 P was admitted to the Four Winds Hospital for a very unstable mood, depression, suicidal ideation and oppositional behavior in school and in his parents home. P acknowledged having an active drug problem. The Four Winds Discharge Summary stated the following:

Axis I  Mood Disorder NOS; Polysubstance Abuse; Rule out Bipolar Distorder, Intermittent Explosive disorder

Axis IV  Fight with family, negative peers, failing grades

(District's P 67)

From September 2, 2003 to August 27, 2004.P attended the Devereux Gleholme Residential Placement (Parent's Exhibit 30)

During school year September 2004 through June 2005 upon agreement by the District and the parents, P attended the Bedford Central School District KEA program. (Parent's Exhibit 7, 3)

An IEP dated March 22, 2005 recommended for the 2005 – 2006 school year, the Special Class Bedford Keys for Emotional Awareness (KEA) program at Fox Lane High School with a 10:1:2 ratio, counseling twice a week for 30 minutes, in a 1:1 and group setting. Under "Comments" the following was written "...The psychologist reports that the student had a great year....Student reports that he has had a good year...Parent reports that they are please with the student's performance and thanked the committee for their support in helping the student return to the home school setting" (Parent's Exhibit 5)

In September 2005 P was enrolled in many mainstream classes. He was taking chemistry, math, English, social studies, Spanish and Physical Education. Denise Taylor, the school psychologist provided counseling as part of the KEA program. P came to individual counseling and group sessions. (T. 1835 – 36) Melanie Ryan, the substance abuse counselor would meet with P at least once a week. She keeps all information confidential because she works for a separate agency hired by the school district. (T. 1853) In September Mrs. K called the Bedford Assistant Principal and wanted to be sure P was coming home clean. Ms. Taylor testified that her recollection was by the third week of September P was slipping in school. P's regents chemistry class was changed to a lower level chemistry. (T. 1848; District's F) P talked to Ms. Taylor about abusing substances and it was difficult for him to be in school and concentrate. (T. 1849) Mrs. K

called Ms. Taylor and stated that she thought P was in crisis and intervention needed to happen. (T. 1850, District's F)

On September 26, 2005 Mrs. K told Ms. Taylor P was at Silver Hill, a rehabilitation hospital in Connecticut. (T. 1851, District's Exhibit F)

Silver Hill Hospital records dated 9/27/05 are incomplete (District's M) and although requested throughout the hearing the records were never provided by the parent despite the parent's reference to the records in the April 5, 2006 letter to the school district from the Parent. (Parent's Exhibit 105)

On 10/07/05 P was admitted to the Four Winds Hospital Admission Psychiatric Evaluation by Silver Hill Hospital for step down care. The record states the following: "He [P] was referred by Silver Hill Hospital by tx of depression, anger management and substance abuse issues. Patients 6[th] Four Winds admission...During individual and group psychotherapy, P focused on family issues and his chemical dependence...There were preparations made for P to return attending the 'KEA" program at Fox Lane H.S." (Parent's Exhibit 120) The Psychiatric Evaluation (Outpatient) History states "Patient reports abusing cocaine, vicodin, cannabis and alcohol abuse. He reported feeling depressed prior to his admission to Silver Hill and was self medicating. Stressor include – 25 year old brother who is away in Iraq, doing poorly in school, cutting classes, got kicked out of his home by parents. Currently he continues to feel depressed, difficulties with sleep, feeling hopeless fearing that he may relapse again, increase appetite. Seroquel 150 mg. Suzanne Hanna CSW for outpatient treatment once a week. Educational Hx: Fox Lane HS – 11th grade, suspended from Fox Lane M.S. for physical aggression

7

Mood is depressed. Affect – dysphoric. Patient denies any suicidal/homicidal ideations.

Insight and judgment are poor

Axis I - Mood d/o NOS; Polysubstance abuse

Patient Treatment Needs and Recommendations: Therapeutic school  - George Uy MD"

(10/05/05) (District's Exhibit B)

On October 6, 2005  Mrs. K called Ms. Taylor and explained Dr. Uy was

attending to P at the Four Winds partial program and AA sponsors were helping P.  (T.

1854, District's Exhibit F)

On October 20, 2005  Ray, social worker at Four Winds contacted Ms. Taylor.

Ray suggested Daytop. P started new medication Lexapro for anxiety and depression,

Seroquel to prevent agitation. The Four Winds wanted to try P staying home for 30 days,

going to school only, not out with friends, going to AA and taking medication.  If that

was not successful then P would go to the  Karen Foundation.  (T. 1857, District's

Exhibit F)

On October 28, 2005  Mrs. K called Ms. Taylor regarding the Karen Placement in

Philiadelphia, Daytop in Millbrook and Hazleton, all substance abuse programs.  (T.

1859) Since P goes to AA from 12:00 – 1:00 and then 5:30 Ms. Taylor was arranging

with Mrs. K for a shortened school day.  P would arrive at 8:05 and leave at 1:00.  (T.

1860) The purpose was to keep P safe within the school building and away from

temptations with other students. He spent his time in class only.  (T. 1861, District's

Exhibit F)

Ms. Taylor testified that in the beginning and through November, P was very serious and directed his focus was to stay with AA and do what he needed to do to make things work. (T. 1864 – 54)

An IEP dated November 17, 2005 stated that P would attend the special KEA class with a 10:1+2 ratio. He would receive counseling twice a week for 30 minutes. P would have a delayed arrival at 8:10 and be dismissed at 1:00. The "Comments" section stated *inter alia* "Presently student's movements are monitored by adults in program since returning. Student is appearing more fidgety now. Program psychologist reports that student will go to another location whenever possible with adults. Student has made an 'amazing' commitment to making things work....Student reports feeling agitated about being in room and feels nicotine cravings. Psychologist reports that level of agitation can increase provocative behaviors. Student has utilized strategies to include time in counseling office or walks in hall. *Parent reports that student is doing well and making up work. Student needs to realize that present schedule can be changed but is up to student. Student is presently isolated from peers in and outside of school.* (emphasis added) ....All members, in concert with the parents, were in agreement." (Parent's Exhibit 3)

On 11/28/05 there was a Discipline Referral "My assistant found him outside smoking and he refused to return." (Parent's Exh. 117)

In December 2005 Ms. Taylor received a call from Mr. and Mrs. K regarding P going to court and asked for a letter regarding how P was doing in school. Ms. Taylor testified that during the month of December it was more difficult for P to stay in the smaller very confined environment. (T. 1868, District's Exhibit F) She also stated that

9

during November and December P did not tell Ms. Taylor he was using drugs and alcohol. (T. 1871)

In January 2006 Ms. Taylor and the KEA team were concerned that P would be turned off from being confined, restricted. (T. 1868) Ultimately it was decided to give P a little more freedom by having lunch in the cafeteria. (T. 1869, District's Exhibit F)

On January 4, 2006 Ms. Taylor called Mrs. K because P was having a difficult day. He would come into the office and put his head down, he was tired, talked about feeling overwhelmed, he wasn't engaged in the learning process. P was feeling a lot of pressure to stay clean and sober. He was feeling sad about not being with his friends. (T. 1870, District's Exhibit F)

On January 4, 2006 the school suspended P for one day suspension for smoking. (Parent's Exh. 118)

On January 9, 2006 P was admitted to Four Winds  The Psychiatric Assessment inpatient record reflected the following notes on the dates indicated:

1/9/06 – "History of substance abuse"

Is patient danger to others – "No"

Patient's own words "I don't want to be here"

Under "Present Illness"

P has a"… history of mood d/o nos, polysubstance abuse….Patient has been clean and sober X 50 days until this past week when he relapsed and started abusing alcohol and cannabis….Patient has made threats to hurt self by jumping out of car or strangling self with a vacuum hose. There is a question whether patient has been compliant with medication regime."

"Type of Substance" Alcohol 4 @ 40 oz beer daily first used 1/2/06 – 1/8/06

Marijuana 3 – 4 grams weed, daily 1/2/06 – 1/8/06; Blackouts – "yes"

"Appearance/Attitude" Unkempt, Depressed; "Mood" Depressed, Irritable

"Thought Content" Suicidal Ideation

"Diagnosis" Axis I – Mood d/o nos, cannabis and alcohol abuse, r/o (rule out) substance

induced mood disorder

Axis IV – "on probation"

"Danger to Self" – Suicidal Ideation

"Outcome" – Admit to inpatient; patient will benefit from 28 day substance abuse

program after hospitalization; assess safety, consider trial of lithium for mood stabilizer.

(District's Exhibit B)

     On January 9, 2006  Mrs. K called Ms. Taylor regarding Suzanne Hanna coming

to a team meeting.  (District's Exhibit F)

     On January 10, 2006 – Mrs. K told Ms. Taylor that P was going to Four Winds.

(T. 1871, District's Exhibit F) P would enter a rehab program to make sure he was clean

and sober because he had used substances over the Christmas break.  (T. 1872, District's

G)

     The following are significant hospital notes regarding P's behavior from Four

Winds Admission dated January 9, 2007:

1/11/06 – "Verbally threats to harm others, nurse, staff"

1/11/06 p.m. P was in room #14 during assault on his roommate … When it was

mentioned by nurse that victim's family could press charges, P verbally and physically

threatening nurse and then staff stating he already had a court date and would get in further legal trouble...."

1/12/06 – P had a code orange called because P became extremely agitated and impulsive toward staff...Pt was directed to quiet room where he requested IM.

MD note – Patient became agitated, threatening to hurt staff, unable to de-escalate with staff verbal intervention requiring IM STAT of prn thorozine to ensure safety."

Family session – During family session P became extremely volatile, screaming and cursing at parents throughout the meeting. He stated he was going to kill his sponsor for "messing up." He stated he was serious about the statement. He continues to be unpredictable and state he will not be safe. Continues to be abusive and confron[tational] towards staff.

1/13/06 – P involved with bullying on the unit but is unwilling to admit to his errors. Very poor insight and poor impulse controls.

1/15/06 – Admitted to substance abuse and legal issues. Mood good. Good behavior [with] control.

1/16/06 – "In House Transfer Note" – Verbally, physically threatening to beat up peer. Seclusion broken at 11 p.m. P compliant.

1/17/06 – "transfer to NG – 11:45 am for con't tx.

1/17/06 "In House Transfer Note" – Aggressive on Lodge; Aggressive towards new patients. Forming a group of peers to gang up against new patients. Pushing and hitting staff who tried to intervene last night. Showing no remorse, no insight into his anger or his behavior. Says he's here for "legal reasons" and refuses to discuss issues or other ways of dealing with his feelings. Transferred to NG at 11:45 am.

1/17/06 3:15 am – "2 men (Marty Lethrud & John Lockwood) from Wilderness program came. P was very cooperative and pleasant above leaving. Appears to be happy and good insight about this program. He took prescribed meds seroquel 20 mg & lexapro 20 mg without any difficulty. Contact family, spoke with father and assure him P is ok. Father will be in tomorrow to pick up belongings."

The hospital Discharge/Referral Summary is dated January 18, 2006 and states the following:

Axis I – Mood Disorder NOS; rule out substance induced mood disorder

Pt admitted to hospital after engaging in high risk behavior. Heavily involved with substance abuse & he wanted to end life.

During pts hospitalization, Pt became somewhat less irritable, but he was still --- ----- out, being disrespectful to staff and peers. Parents decided to sent pt. to wilderness program. He was able to identify ---- stressors in his life, but was reluctant to fully engage in treatment plan. He was able to increase concentration, but not on a consistent basis.

At discharge, pt. denied suicidal/homicidal ideation. He was picked up and went directly to Wilderness program. He was cooperative when picked up.

Continue current meds (Seroquel 200 mg; Lexpro 20 mg) (District's Exhibit B)

The Four Winds Hosptial Final Education Summary dated January 18, 2006 state the following:

Method of Instruction: 1:1, small group instruction; daily class work plus homework assignments "Educational Summary" – While at Four Winds P worked on appropriate grade level materials in the above subject. P has been able to complete assignments in

13

the supportive setting of small classes and individualized expectations at the Learning

Center. P has been cooperative and appropriate in the classroom. Due to the short length

of stay grades are not applicable. P attended classes for 1 day (2 classes per day). He

did work on the following topics in each of the given academic areas: English:

vocabulary, Math: inventory. (Parent's Exh 120)

      On January 18, 2006 P left the hospital and entered the Ascent Wilderness

Program in Idaho. The Ascent Program Master Treatment Plan by John P. Schrom, MFC

Clinician listed the following information:

Initial Diagnostic Impression was as follows:

Axis I – Polysubstance Dependence Disorder; Conduct Disorder Adolescent-Onset Type;

Physical Abuse of Child-Victim; Dysthymic Disorder

Axis IV-Problems with primary support group, discord with family, separated from

family, inadequate adjustment in home, school and community, academic problems.

(Parent Exh 121C by Schrom)

      The Ascent Bio-Psychosocial Assessment taken on 1/18/06 and Reported on

1/19/06 stated as follows in each section:

Comments: He admitted to recent suicidal ideation, but claimed he would never do it.

History of Abuse – Physical, emotional – brother/ peers – abuse not reported

Emotional/Psychiatric History, yes 4 years Reason for treatment: On going therapy for

anger management, poor relationships and substance abuse

Diagnosis – non verbal learning disorder

Diagnosis – substance abuse, substance dependence

Legal History & Current Legal status:

14

Arrest(s) substance related; now on paroles/probation; arrest no substance related; incarceration 1x

P claims to have been arrested on an average of 4 times per year since age 11. P also believes that if he completes this program successfully his current felony charge will be reduced to a misdemeanor. (Parent's Exhibit 121C)

During the hearing this Hearing Officer requested information of the parent whether P's placement at the Ascent and Wilderness ranch were connected to his legal case. (T 2359)

Question: "Was there any relationship to your decisions regarding placement for P to his legal matter?"

Parent's Answer: "Absolutely none. It had absolutely nothing to do with it. The reason that we made a decision collectively with outside therapist to put P in the wilderness program is because my sister-in-law committed suicide at 24 years old... It was putting him in a temporary place where we could try to figure out with the CSE what would be the next right step for P....It was a continued hospitalization." (T. 2287)

Mr. Schrom of Ascent testified "When a student comes to Ascent, the focus isn't about the substance abuse, per se. It's about getting the student clean and healthy and sober so they can begin to develop confidence and self-esteem, so they have the opportunity to look at the substance abuse issues later on." (T. 900)   He needed to really gain the understanding of the amount of substances that he was using the impact it was having on his life, the legal impact it was having on his life. (T. 901) Along with an opportunity to find assistance when he goes back into the community. Let's say AA meetings or NA meetings to provide him with the support. (Parent's 121B)

Mr. Strom further stated "P thrived in this environment here. Initially, he had some difficulty testing boundaries and limits, but he really thrived overall emotionally, physically, mentally. P had group therapy three times a week. And each of those sessions was approximately two and a half hours, three times a week. Then he had a minimum of individual counseling with myself for one hour a week. The he was – he saw Dr. Schroeder for some psychological testing. I can't give you the exact hours of how many hours Dr. Schroeder spent with him." (T. 907) Traditional therapy, yes. Individual work and then actual group work is the best work that you can do clinically with adolescents. (T. 908)

Mr. Schrom testified that P was scared to death of Tom and didn't want to be left alone with him. (T. 916) He talked about being beaten, being threatened, being hit, on numerous occasions between the ages of 3 and 13 (T. 922). P was currently on probation, and that he had arrests for substance abuse and arrests for non-substance abuse related and he was incarcerated.

Question: "what did you take overall from this biopsychosocial assessment"

Mr. Schrom Answer "That we really had a student who had a lot of substance abuse, potential substance dependence going on. We had an extremely angry kid that really looked more serious in the sense of diagnoses in particular looking at a conduct disorder, which is more serious than, let's say, an oppositional defiant disorder. A conduct disorder really begins to violate the rights of others, where oppositional defiance doesn't do that. As a young man who really experienced a great deal of trauma in his life. Who didn't see the world as a safe place. Didn't see himself as somebody who could succeed at much of anything." (T. 923 – 924)

Ascent Bio/Pscyhological Assessment dated March 1, 2006 stated the following:

Substances Used by Student: Alcohol – 4 – 40 oz; Amphetamines – 4-8 grams;

Crack cocaine daily; Hallucinogens; Marijuana daily; Hashis 4 tx daily 4 grams

Cigarettes 2 pks daily; Consequences of use: suicidal impulse,

"Patrick speaks about the drugs "he hasn't used." He also talks about dependence and the

"need for" using.

Axis I Polysubstance Dependence Disorder; Conduct Disorder Adolescent-Onset Type,

Physical Abuse of Child – Victim; Dysthymic Disorder

Axis IV Problems with primary support group, discord with family, separated from

family, inadequate adjustment in home, school and community, academic problems.

(Parent's Exh. 121B)

On January 23, 2006  Ms. Taylor called Mrs. K offering Michael Orth, a

community network person.  (T. 1875, District's Exhibit G)  The Mental Health

Association of Westchester offers counseling for families, group counseling, individual

counseling, weekend experiences camping in a safe, healthy environment supervised with

adults.  (T. 1876)

On February 3, 2006,  Jeff Schroeder recommended the following:

"P will need the educational structure, the behavioral focus, and the therapeutic

interventions of a Residential Therapeutic School in order to maintain the progress he has

made there." (Parent's Exh. 35)

On February 8, 10, 2006 Jeff Schroeder tested P, the results were recorded in the

Ascent Psychological Evaluation Report:

Reason for Referral: P is a 16 year old boy referred to ASCENT Wilderness Therapeutic Program because of severe behavior problems, including extensive and repeated use of alcohol and drugs, anger explosions including violent assaults, and numerous legal problems. He is evaluated to determine cognitive capability, academic level, attention problems, personality characteristics, emotional issues, social attitudes, and substance abuse risk factors, in order to inform decisions concerning placement subsequent to his tenure at ASCENT.

Relevant History: He is currently taking Seraquil and Lexapro. P was most recently at Four Winds Hospital and from reports he was out of control. P has an alcohol and substance abuse problem....He has been in trouble with the police and currently has a case pending against him for a fight with another teenager. He has spent the night in the local jail and is out on bail. ...During his sophomore year he was successful with good grades and no real behavioral issues. He was student of the month and was clean and sober until April 2005....P claims to have been arrested on an average of 4 times per year since age 11. P also believes if he completes this program successfully his current felony charge will be reduced to a misdemeanor.

Mental Status and Behavioral Observations: He admitted to recent suicidal ideation, but claimed he would never do it. The completeness of his self-disclosures was doubtful.

Test Results: The Minnesota Multiphasic Personality Inventory-Adolescent: Depression is prominent feature-not just situational/reactive; The Million Adolescent Clinical Inventory; Beck Depression Inventory – P endorsed a minimal level of depressive symptoms and a very minimal level of anxiety related symptoms. It became quickly

apparent from his behavior and verbalizations that these self reports were indicative of a very high level of denial, distrust and minimization.

Diagnostic Impression: Axis l – Polysubstance Dependence Disorder; Conduct Disorder Adolescent-Onset Type; Physical Abuse of Child-Victim; Dysthymic Disorder

Axis IV-Problems with primary support group, discord with family, separated from family, inadequate adjustment in home, school and community, academic problems.

Summary: P is of Above Average to Superior intelligence and is currently performing at or slightly above his age and grade level in academic content areas. The gap between his IQ and his academic level may be indicative of a Learning Disability, but may also be indicative of the cognitive and motivational impediments of severe substance abuse. There are indications of the possibility of Attention Deficit Hyperactivity Disorder...

Recommendations: 1. P will need to be placed in a structured residential treatment program in order to consolidate and continue the gains he has made at ASCENT 2. His educational needs can be addressed in a classroom setting within a residential program, and he could benefit from an enriched or advanced curriculum. 3. Experiential learning paradigms, structured behavioral contingencies, and well monitored prosocial relationship opportunities will be more effective treatment strategies than will traditional "talk" psychotherapy. 4. Further evaluation for the possibility of ADHD could be helpful. (Parent's Exhibit 121E)

On February 17, 2006 – Ms. Taylor called Mrs. K about a meeting with Michael Orth and Betsy Litt's telephone number of Mental Health Association. (T. 1878, District's Exhibit G)

On February 23, 2006 in a letter from Scott Gillet LCSW to "Whom This May Concern" he stated the following:

"I have been working with the K family for past two months. During the course of this treatment we were forced to intervene on P and place him in a hospital first and then in a therapeutic treatment facility where he currently resides. He has demonstrated poor judgment and an inability to control his impulses. This combined with his mental illness dictate the need for a structured therapeutic setting....He is currently enrolled in the Assent program, which is a setting that will best suited to meet all of his needs at this time." (Parent's Exhibit 36)

In a letter dated February 23, 2006 from Mrs. K to the Bedford Central School District, she stated:

"...effective March 13, 2006 we will be placing our son, P, at a residential therapeutic school at Wisdom Ranch in Arco, Idaho...When we finally were given these dates as options, P was undergoing the full battery of psychological testing with Dr. Jeff Schroeder, Psychologist at the Ascent Wilderness Program. We requested that we allow for the completion of this full scale assessment on P prior to an evaluation of network services allowing for the best informed decision making in this brainstorming process...Once *we had the evaluation and recommendation in hand*, [emphasis added] P's Father and I attended a meeting and meet with Neil Hawlk, M.S., CSW and an Individualized Care Coodinator with the Mental Health Association of Westchester...Mr. Hawlk suggested that their services seemed mor appropriate for options after residential...Ms. Litt went into great detail explaining all services available through the

community…We ended our conversation with the knowledge that none of the available options were viable for P." (Parent's Exhibit 101)

At the hearing Betsy Litt, staff development specialist with the Children's Mental Health Services with Westchester County testified on behalf of the District. (T. 2319) Ms. Litt refreshed her memory with her phone log before testifying. (T. 2323) Ms. Litt testified when she started to talk about possible out-of-home placements through the Mental Health System, the parent felt that it was not an appropriate route. The parent told Ms. Litt she had spoken with Neil Hawlk but the parent felt that it was not an appropriate route because P was in crisis. (T. 2324) Ms. Litt testified that she did not say that there was no services that would be helpful to P, Ms. Lit didn't know whether services would be appropriate because she did not know what P's diagnosis was and whether he would meet the criteria for case management. (T. 2328)

On February 27, 2006 George Uy, MD wrote the following:

"I am strongly recommending that P enters a *therapeutic residential school* [emphasis added] to meet his educational and emotional needs. He is at a high risk for decompensation if he is to return to a regular school. He requires a structured therapeutic environment to meet his needs such as a therapeutic residential school setting." (Parent's Exhibit 37)

On the February 2006 ASCENT Psychological Evaluation the summary report stated the following:

"P is a 16 year old boy referred to ASCENT Wilderness Therapeutic Program because of severe behavior problems, including extensive and repeated use of alcohol and drugs, anger explosions including violent assaults, and numerous legal problems. Diagnostic

Impression: Polysubstance Dependence; Dysthymic Disorder, Disruptive Behavior

Disorder ADHD Inattentive Type (Same Recommendations as above)" (Parents 121F)

On March 1, 2006 the ASCENT Discharge Summary by Mr. Schrom stated the

following:

Reason for placement: P was most recently at Four Winds Hospital and from reports he

was out of control. P has an alcohol and substance abuse problem. He has also been

classified as learning disabled and has behavioral issues. In addition, P is impulsive and

makes very poor choices. He has been in trouble with the police and currently has a case

pending against him for a fight with another teenager. He has spent the night in the local

jail and is out on bail. Axis I (same as above), Axis IV (same as above)

Discharge Medications: N/A

Recommendations: 2. It is recommended that student participate in individual therapy to

assist student to manage his anger, anxiety, and establish his identity 3. Group therapy is

recommended, as needed, in order to assist student in developing appropriate age-related

relationships in a therapeutic atmosphere. Group therapy will assist student to connect to

emotions and provide a safe environment to express those emotions. 4. It is

recommended that the family participate in family therapy in order to establish

boundaries and address issues of enmeshment between mother and son. 5. Student

would be helped by using Cognitive Behavioral Therapy to challenge negative thought

process and integrate positive new benefits. (Parent's Exhibit 121D)

On March 3, 2006, the parents completed application for the Wisdom Ranch

stating the following:

Depression – Yes on anti-depression medication.  Genetic pre disposition – family history;  Drug use – Yes – marijuana – cocaine; Suicide discussion – No;  Police Intervention – Yes, charges reduced to violation – no probation; Running Away _ yes, but called and asked to be rescued after day or 2 Happened 2X5 – drug related; Physical – Yes – due to perception and adversarial relationship with older brother.  Father used physical means for disciplinary purpose which adversarial modeled relative behavior; Traumatic events – yes – my diagnosis his stay at Glenholme, relationship w/brother. (Parent's 123A)

At the hearing on July 28, 2006, Monte MacConnell, director of Wisdom Ranch School in Idaho testified on behalf of the parent.  Mr. MacConnell has a masters in agricultural economics.  His work included a couple of years at SUWS Adolescent Program, Exploration a therapeutic residential, a wilderness program in Montana and Aldridge Academy, a therapeutic program in West Virginia.  Mr. MacConnell testified his title was therapist. (T. 725)  Mr. McConnell stated that Wisdom Ranch is an experiential alternative school in a ranch setting.  They use physical activities to not only educate the boys scholastically but give them life experiences by which they can gain a greater sense of independence and personal success.  *Wisdom Ranch does not offer any therapy.* [emphasis added]  There are 20 students at the ranch for whom traditional classroom educational models do not work.  The ranch is an Idaho accredited high school. (T. 731)  The school administrator has 35 years of special education experience. (T. 733)

Question: "Do you have students who have behavioral or emotional needs?"

Mr.. MacConnell Answer: "I would say yes. To me that wouldn't be the primary reason

why they're at Wisdom Ranch, but yeah, we do."

Question "Would you call Wisdom Ranch a therapeutic setting?"

Mr. MacConnell Answer: *"No. We're not like private therapy."* [emphasis added]  (T.

739)  They have arrangements with other therapists, licensed therapist as the need arises.

(T. 755)

The IEP dated March 9, 2006 stated the following:

"Comments" – Parent presented the CSE with only four letters during the meeting.

(Parent's Exhibit 1)

On April 5, 2006 Mrs. K wrote a letter to Bedford School district stating the

following:

"…glaring factual errors contained in the comments section [IEP]. In particular the

school's misguided focus on P's substance abuse and not his true disability (previously

recognized by the school and many professionals working with P) of emotional

disturbance. It is this one sided and uninformed view of P (and denial of any meaningful

input from us, his parents) which has led to the CSE's inappropriate educational

recommendations….Patrick's spiraling decline actually commenced last school year

while placed in the KEA program. In fact, without the proper emotional and educational

support needed to succeed it was inevitable that P's emotional condition would

deteriorate.

"Following the summer where student began actively using drugs, student's availability

to learning was impacted. In fact, the school staff is aware that P's emotional decline

began in the spring of 2005, while attending the inadequate KEA program.

"In fact, as I indicated at the CSE meeting, P was admitted to Silver Hill, a program specifically for drug addiction, on September 27, 2005 and discharged on October 4, 2005. As I informed the CSE, Silver Hill sought P's discharge and referral to the partial hospital program of Four Winds Hospital because Patrick's condition was not 'just a drug issue.' *The physician from Silver Hill stated (and I shared with you) 'you know that this is more than drugs – look at his past history*.'" (Parent's Exhibit 105)

"Following December break, during first week back, student's availability for learning had been decreased due to a drug relapse. In fact P's availability for learning had been impaired for the entire year due to his deteriorating emotional state. It was not a 'drug relapse' it was *P's severe depression and anxiety* [emphasis added] which impacted his ability to learn."

On May 15, 2006 Ms. Taylor called Mrs. K regarding social history. (District's Exhibit G)

On May 24, 2006 Ms. Taylor called Mrs. K regarding question on last part of social history, Mrs. K stated she wanted to leave it blank. (T. 1880, District Exhibit G)

A letter dated June 15, 2006 from George Uy MD stated:

"...writing this letter upon the request of the legal guardian/parent of the above named patient. P has been under my private psychiatric care for the past year. He has a history of mood lability and depression. He has been hospitalized at Four Winds Hospital for at least 3 times and have attended the Partial Hospitalization Program 4x within a span of several years from 2002 through January 2006. He also attended a wilderness program in the past prior to his recent entry to Wisdom Ranch. In the past several months after entering the Wisdom Ranch, *P has progressed and has done extremely well in this type of*

*therapeutic setting* [emphasis added]...I am strongly recommending that he continue

such program at the same facility through the summer and through the following school

year. I am afraid that he will decompensate again if he is allowed to enter a different

program or a program that is not as structured as the one he is currently attending. I also

feel that it is too premature to step him down to a lesser supervised setting even though

he has made tremendous advancement in the past few months....He recently stopped his

medication while he was at the Ranch and quickly decompensate showing recurrence of

depressed and irritable moods. He restarted his medication upon my recommendation

and we were able to help him get back on track again. (Parent's Exhibit 38)

On June 16, 2006, the parents wrote a letter to the Bedford School District stating

the following:

"In fact, his needs are so severe that he can be educated only in a highly structured and

supportive therapeutic residential program such as Wisdom Ranch"..."Dr. Uy has

stressed the need for Patrick to be maintained in a therapeutic residential setting"..."He

emphasized that Patrick has a long history of difficulties and has done well in his current

setting where his condition is closely monitored and he is receiving intense treatment."

(Parent's Exhibit 132)

The June 19, 2006 IEP Levels/Abilities include no information from Wisdom

Ranch but instead relied on the following information

Standardized tests 2/10/06 from Ascent Psychological Eval Report

Comments: No discharge summary from Four Winds; Ascent cognitive testing results

used; Dr. Uy – student stopped meds w/past mos. Resulting in decompensation –

program knew he stopped and contacted the parents and Dr. Uy who convinced P to get

back on meds. Dr. Uy saw P sporadically from October to January. *He reports without the substances, he is better able to diagnose some of the student's emotional factors and get a clearer picture of the student's depression. Initially a Mood Disorder was diagnosed." Parents & Dr. Uy recommend therapeutic residential program.* [emphasis added] ...parents shared that the student was arrested last summer after pulling a knife on another person and there is a current felony charge against him. Asked for additional information – parent's attorney felt parents provided the committee with enough information at this point to make a determination. (Parent's Exhibit 126)

On July 17, 20006 the Wisdom Ranch report card stated the following Course Area – English, Speech, Social Studies, Science – Pending dated (Parent's Exhibit 123B)

On July 19, 2006 P was referred from the Wisdom Ranch to the SUWS Program because "...P exhibited oppositional behaviors, authority conflict, inability to follow rules at Wisdom Ranch, some destruction of property when angry, lying and manipulating peers in order to cause conflict among peer groups. He was asked to leave Wisdom Ranch for smoking cigarettes on campus and instigating conflict between dorms." P stayed at SUWS during the following time period 7/16/06 – 7/22/06; 7/23/06 – 7/29/06.

SUWS stated the following: Mood – normal, depressed mood – yes; diminished interest or pleasure in usual activies – yes; depression occurred before, after during drug abuse

7/26/06 Initial Service Plan - "Prior to entering the SUWS Adolescent Program, P exhibited lying, manipulation, defiance, negative peer association, inappropriate behavior

in school, anger and communication difficulties. In addition, information gathered during his initial assessment indicated problem areas including: authority conflict and declining academic performance. SUWS placement is deemed appropriate at this time according to the projected length of stay, which will be contingent upon P's progress.

Axis I – Oppositional Defiant Disorder

Axis IV – problems related to the social environment and educational problems

SUWS Discharge Summary 7/31/06 Because P was at SUWS such a short time, he did not move through the phases of the program and graduate. He received no academics at SUWS. (T. 768 – 769)

Recommendations: an academic setting with access to experiential learning; a small positive peer culture; a clear system of boundaries, consequences, and follow-through; individual therapy focused on emotional recognition and growth, honesty, working through anger and substance use, enhancing coping skills, accepting personal responsibility, and working through continued struggles with his parents; family therapy, with a focus on open and honest communication, supporting the emotional growth work and active listening; group counseling focused on substance rehabilitation and relapse prevention. (District's Exhibit L)

DISCUSSION

The parent requests tuition reimbursement for the school year 2005-2006 for P's placement at the following locations:

1. The Ascent, Idaho program from January 18, 2006 through March 3, 2006 including chaperoned transportation from New York to Ascent

2. The Wilderness Ranch School, Idaho from March 3, 2006 to June 30, 2006

3. SUWS program from July 15 to July 22, 2006 and July 23, to July 29 2006.

4. The Wilderness Ranch School from July 1, 2006 to June 30, 2007.

A board of education may be required to pay for educational services obtained for a student by the student's parents, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 [1985]). The failure of a parent to select a program known to be approved by the state in favor of an unapproved option is not itself a bar to reimbursement (Florence County School District Four, et al. v. Carter by Carter, 510 U.S. 7 [1983]).

On the IEP dated November 17, 2005 for the 2005 – 2006 school year, the parents agreed with the district's recommendation which *inter alia* was placement at the Bedford KEA program at Fox Lane High School. (Parent's Exhibit 3)

On January 12, 2006 the parent wrote a letter to the Bedford Central School District Committee on Special Education requesting a meeting as soon as possible. (Parent's Exhibit 95)  Ms. Laurie Bauer, Assistant Director of Special Education spoke on the phone with the parent and asked if she would be willing to have a KEA team meeting to talk about the strategy. (T. 1584)  The parents agreed to meet. (T1585)  The meeting was held on January 17, 2006 at which time Mr. and Mrs. K informed the team that P would be going to the Wilderness program. (T. 1585)  On January 18, 2006 P left the Four Winds Hospital and entered the Ascent Wilderness program in Idaho. (Parent's Exhibit 121C)

IDEA Section 1412(a)(10)(C)(iii) states: "The cost of reimbursement...may be reduced or denied (I) if (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give "written notice" to the public agency of the information.

As to tuition reimbursement for the Ascent Wilderness program, the parents failed to give the required written notice.

The Individuals with Disabilities Education Act (IDEA) (20 U.S.C. § 1400 et seq.) requires that children with disabilities be provided a FAPE (20 U.S.C. § 1412[a][1]). A FAPE includes special education and related services provided in conformity with an IEP (20 U.S.C. § 1401[8]). Turning to the question of whether placement at Ascent was appropriate, petitioners bear the burden of proof with regard to the appropriateness of the educational program for which they seek reimbursement during the 2002-03 school year (M.S., 231 F.3d at 104; Application of a Child with a Disability, Appeal No. 02-111). In order to meet that burden, petitioners must show that Ascent offered an educational program which met their son's special education needs (Burlington, 471 U.S. at 370; M.S., 231 F.3d at 104-105; Application of a Child with a Disability, Appeal No. 02-111). The private school need not employ certified special education teachers, nor have its own IEP for the student (Application of a Child with a Disability, Appeal No. 02-111).. Ascent Wilderness Program was not appropriate because the school did not provide the special education services required to meet P's emotional needs. Although many programs are adjunct in support of education, the Ascent program is *not* an educational program. (T. 659, 1019)

The next issue is whether the district's recommendation on the IEP dated March 22, 2006 was appropriate to meet the needs of the P.

The district must make a recommendation on all of the student's evaluations and information. On March 9, 2006 as reflected in that IEP (Parent's Exhibit 5), the district had only the prior evaluations from 2003 (p. 3 of 7). Although there were many records available and in the parents' possession (Parent's Exhibit 101) including the following: hospital reports from Silver Hill Hospital dated 9/27/05 (Parent's Exhibit 105) Four Winds Hospital Report dated 10/7/05, Four Winds Hospital Report dated 1/9/06 (District's Exhibit B); Ascent Bio/Psychosocial Assessment dated 3/1/06 (Parent's Exhibit 121B), Ascent Program Master Treatment Plan dated 3/1/06 (Parent's Exhibit 121C), Ascent Discharge Summary dated 3/1/06 (Parent's Exhibit 121D), Ascent Psychological Evaluation Report dated 2/10/06 (Parent's Exhibit 121E), Ascent Psychological Evaluation Brief Summary Report undated (Parent's Exhibit 121F), Wisdom Ranch School Contract and Application for Admission dated 3/3/06 (Parent's Exhibit 123A).

The CSE had none of this information. Ms. Taylor received a four page fax regarding P's Four Winds Hospital admission of 10/7/05 but failed to provide the CSE with the information. (Parent's Exhibit 130, T. 2010) However, a review of Parent's Exhibit 130 provides no new significant information about P. According to the IEP "Comments" the parent presented four letters during the meeting. Most significantly, the district was never informed of the following: P's aggressive behavior during the admission at Four Winds Hospital on January 9, 2006 and the need to isolate him during his admission (District's Exhibit B); P's suicidal ideation as documented on the January

9, 2006 Four Winds Hospital records and Ascent Bio-Psychosocial Assessment reported

on January 19, 2006 (District's Exhibit B, Parent's Exhibit 121C);. P's physical and

emotional abuse as reported by Ascent (T. 916; Parent's Exhibit 121C, 123A); the high

level of drug abuse from September 2005 through January 2006 (District's Exhibit B;

Parent's Exhibit 121B, 121C). According to the IEP the district had the following

information: P was using illegal substances, he was on medication for depression but had

stopped taking his medication and started using drugs during the Christmas break. P had

been diagnosed with depression and anxiety. (Parent's Exhibit 1). Despite the plethora of

information regarding P the district received very little of that information.

P has concomitant diagnoses throughout his evaluations of depression and drug

abuse. P's classification of emotional disturbance is based on his diagnosis of

depression. Drug abuse is not a classification under IDEA. Based on the information

the district had at the time of the CSE review, the district's recommendation was

appropriate.

Another issue is the question of P's predominant disability, depression or drug

abuse. Unfortunately, there was no definitive testimony. The documents submitted in

evidence have both information regarding drug abuse and depression. However, Wisdom

Ranch School is an inappropriate placement for P's depression. The parent's witnesses

testified that P should attend a therapeutic school; (Dr. Uy, District's Exhibit B, Parent's

Exhibit 126, 37, 38) Scot Gillett (Parent's Exhibit 36); (Jeff Schroeder T. 908, Parent's

Exhibit 35, 121E); (Jeffrey Schrom Parent's Exhibit 121D), (SUWS District's Exhibit

L) In a letter dated February 23, 2006 to the Bedford Central School District Even the

parent notified the district that they were placing P at Wisdom Ranch in Arco Idaho a

residential therapeutic school. Furthermore, Mr. MacConnell, director of Wisdom Ranch unequivocally stated that Wisdom Ranch School is not a therapeutic school. The Ranch has no therapeutic services available within the confines of the ranch. The Ranch provided no individual education plan or treatment plan. (T. 739)

Dr. Uy, P's treating psychiatrist indicates that without the substances he is better able to diagnose some of the student's [P] emotional factors and get a clearer picture of the student's depression. (Parent's Exhibit 126) Additional indicia can be gleaned from the programs the Wisdom Ranch School provides. Wilderness provides no therapeutic services (T. 731) to treat depression but is rather an experiential school.

On June 19, 2006 at the CSE meeting the district had only two scores available from Ascent's Bio/Psychological evaluation. Based on the record available to it, the district once again had no additional information regarding P. The district's recommendation was appropriate.

On March 13, 2006 P went from the Ascent Wilderness Program. Idaho to the Wilderness Ranch School, Idaho. (Parent's Exhibit 101) The parent's placement of P at the Wisdom Ranch School is inappropriate because of the school's failure to provide a therapeutic school environment. On July 16, 2006 P was referred from the Wisdom Ranch to the SUWS Program because he exhibited similar behaviors as he did when he was admitted to Four Winds Hospital on January 9, 2006 such as oppositional behaviors, authority conflict, inability to follow rules, some destruction of property when angry, lying and manipulating peers in order to cause conflict among peer groups. He was asked to leave Wisdom Ranch for smoking cigarettes on campus and instigating conflict

33

between dorms. P's regression to old behaviors are an indication of the inappropriateness of his placement.

Finally, SUWS recommends individual therapy focused on emotional recognition and growth, honesty, working through anger and substance use, enhancing coping skills, accepting personal responsibility, and working through continued struggles with his parents; family therapy, with a focus on open and honest communication, supporting the emotional growth work and active listening; group counseling focused on substance rehabilitation and relapse prevention.   (District's Exhibit L)  These therapies are not available at Wisdom Ranch School.

SUWS does not provide any academics and therefore for the reasons stated above it is beyond the scope of IDEA to award tuition reimbursement.

Finally, the parents continuous failure to provide critical information available from the institutions that P entered from the 2005 – 2006 school year denied the district to ability to properly assess the nature of P's disability and was clearly inequitable

IT IS HEREBY ORDERED that the parent's petition for tuition reimbursement is denied.

March 9, 2007


_____
MARY NOE
Hearing Officer

RECEIVED
APR 0 9 2007
OFFICE OF
STATE REVIEW

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

RECEIVED

APR 0 9 2007

OFFICE OF
STATE REVIEW